IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:05cr194-MEF |
| | ) | WO |
| WILLIE JAVON SPRINGS | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. Introduction**

Defendant Willie Javon Springs was charged in a one-count indictment with stealing a firearm in violation of 18 U.S.C. §922(u).  On December 12, 2005, the defendant filed a motion for mental competency examination.  Doc. # 12.  The court granted the motion on December 22, 2005, and ordered the defendant committed for the purpose of examination.  Doc. # 13.  Subsequently, after Springs was evaluated and found competent by the examiner, defendant "appeared minimally capable of assisting counsel with the preparation of his case."  Doc. # 31.  However, according to his counsel, Springs began thereafter to exhibit bizarre behavior.  After an evaluation by Dr. Theron M. Covin concluded that defendant "appeared delusional,"Springs filed a motion for mental competency hearing on August 30, 2006.  Id. (Exhibit A).

The court held a scheduling conference on September 7, 2006, and a competency hearing on October 2, 2006.  The undersigned also reviewed the initial report of the court-appointed examiner, Dr. Manuel E. Gutierrez, Psy. D., dated February 23, 2006, and his

supplemental report dated October 27, 2006, in addition to the undated report by Dr. Covin.

For the reasons discussed *infra*, the Magistrate Judge concludes that defendant Springs is competent to stand trial at this time.

## II. Factual Findings and Analysis

The United States Supreme Court has "repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'" Cooper v. Oklahoma, 517 U.S. 348 (1996) (citations omitted). "'Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so.'" Id. at 354 (citation omitted). "The test for competence is also well-settled." Id.. "A defendant may not be put to trial unless [she] has sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding ... [and] a rational as well as factual understanding of the proceedings against [her]." Id. (citing Dusky v. United States, 362 U.S. 402, 402 (1960)(internal quotation marks omitted)); see also United States v. Nickels, 324 F.3d 1250, 1252 (11th Cir. 2003).

The federal competency standard is codified at 18 U.S.C. §4241. This statute provides that "if, after a hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the

2

custody of the Attorney General." 18 U.S.C. §4241(d).

Defendant Springs comes before the court with several issues relating to competency. He has a psychiatric history which includes, *inter alia*, a previous commitment, as well as earlier diagnoses of schizophrenia and possible mental retardation, and he has reported to his counsel and others that he has experienced auditory and visual hallucinations. He has also been unable or unwilling at times to assist his counsel in preparing his defense. For example, when investigators for the Federal Defender's office came to meet with Springs, they

> introduced [themselves] to him and told him why [they] were there, to gather information to assist in his defense. And the first question he asked [them] was, "Defense of what?" And [they] told him that, "You have been charged with a federal crime, and that's why you're incarcerated."
>   And during [their] conversation with him, he would just sit there and look at [them], and then he would just go to smiling and laughing. And [they] asked him ... what was so funny, why was he laughing. And he told [them] that he was looking at the devil sitting on [one of the investigators'] shoulder. And so [they] asked him what was the devil doing? And he said the devil was making faces at [the investigator].

(October 2, 2006 hearing). According to the investigator, Springs also said that the devil wanted him to harm one of the investigators, and sometimes it wanted him to harm himself. The investigator did not think that Springs was "dealing with reality at all."

At the competency hearing in this case, the court heard testimony from Springs himself, as well as from his defense counsel's investigators and Springs' parents. Springs' parents supported the investigators' view of Springs' mental deficiencies and his alleged inability to assist counsel. The government presented testimony from Manuel E. Gutierrez, Psy. D., a forensic psychologist who examined Springs pursuant to the court's order, the only

expert testifying in this case. Dr. Gutierrez did not agree with previous reports that Springs suffers from schizophrenia and possible mental retardation; rather, he diagnosed Springs on Axis I with malingering and adult antisocial behavior.

Gutierrez' diagnosis, as set out in his initial report and presented at the competency hearing, was informed in part by Springs' performance on a number of objective tests. For example, with regard to Springs' alleged cognitive deficits, Gutierrez reported that Springs obtained a composite score on the KBIT-2 which indicated moderate mental retardation. However, the examiner believed that Springs' test results were "not an accurate representation of his true capabilities." Forensic Evaluation (February 23, 2006) at 6. At the hearing, Gutierrez explained that Springs' score on this test was the lowest score possible, and that the score was inconsistent with Springs' level of education and his ability to comport himself appropriately and without any difficulties at the institution where he was examined, including getting his own meals and taking care of his personal hygiene without assistance. In addition, on the Validity Indicator Profile, Springs' response style was classified as "suppressed," meaning that "he intentionally chose incorrect items as he completed the measure." Id. As the examiner noted, Springs "incorrectly answered the ten easiest items on each subtest. The likelihood that this occurs by chance alone is less than 0.1%." Id.

Similarly, Springs' profile on the MMPI-2, a test designed to assess mental illness, "was found to be invalid, due to the exaggerated nature of his complaints." Id. As Gutierrez noted, "while taking the MMMPI-2, [Springs] answered the questionnaire in a manner that is consistent with over-reporting psychological problems. As a result, further interpretation

4

of his profile was not possible." Id. However, according to the examiner, Springs' profile did reflect "that he understood the item content and that he responded in a consistent manner. That is, he did not answer randomly or in a haphazard fashion." Gutierrez observed that because the MMPI-2 "requires reading/auditory comprehension at the eighth grade level," "it is unlikely that an individual with Moderate Mental Retardation would be able to answer the questionnaire in a consistent manner." Id. The examiner concluded that "[t]he results of the current evaluation indicate that Mr. Springs is malingering with respect to his cognitive deficits and psychiatric symptoms." Id. at 7. "Due to his intentional attempts to influence the outcome of this evaluation, it was not possible to determine if he suffers from any legitimate mental illness or cognitive deficits." Id.

Gutierrez' examination yielded similar results concerning competency testing. On the GCCT-MSH, an instrument designed specifically to assess competency to stand trial, Springs displayed some knowledge of the charge against him and the name of his attorney, but he "inadequately described the roles of the judge, prosecutor, defense attorney, and witnesses," and he did not know "what the possible outcomes were in this case, or if he was facing a likely prison term." Id. at 8.[1] However, Springs' "score of 28% was significantly below the scores obtained by individuals who are typically found incompetent to stand trial." Id. In addition, he endorsed several items on the test which are designed to address "atypical presentation." Id. According to Gutierrez, "[i]ndividuals who are genuinely incompetent to

---

[1] Interestingly, Dr. Covin noted that Springs seemed to understand the basic roles of the judge, the prosecutor and his lawyer. Doc. # 31.

stand trial do not usually respond in the affirmative to these questions." Id. Similarly, on the Competency Questionnaire, Springs answered 11 of the 15 items incorrectly. Id. at 9. According to Gutierrez, "[n]ot only does this suggest below chance responding, but it also implies that Mr. Springs attended to the item content, and then deliberately chose the wrong answer." Id.

> Based on his examination, Gutierrez concluded as follows:
>
> During this evaluation, it was determined that Mr. Springs is malingering with respect to his cognitive deficits and psychiatric symptoms. Also, his purported lack of understanding of the judicial process is not considered to be authentic. At this time, there is no objective information to indicate that the defendant is suffering from a mental disease or defect which interferes with his ability to understand the proceedings against him or to assist properly in his defense. Consequently, it is recommended that he be found competent to stand trial.

Id. at 9.

At the competency hearing in this case, defendant produced 400 new pages of mental health records from Baptist Medical Center South/Meadhaven and Griel Memorial Psychiatric Hospital. Because Gutierrez had not had the opportunity to review these documents, the court requested a supplemental report. After examining the records, and in light of the testimony presented at the hearing, Gutierrez amended his assessment of Springs to reflect, on Axis I, diagnoses of malingering, adult antisocial behavior, cannabis dependence in a controlled environment, and alcohol abuse. Forensic Evaluation Addendum (October 27, 2006) at 4. Gutierrez concluded as follows:

> The reviewed records shed some light on the defendant's psychiatric history and the likely etiology of some of his past symptoms. These suggest that Mr.

6

> Spring's past symptoms, if legitimate, were substance-induced. In fact, on multiple occasions, the defendant claimed that he was not mentally ill, and that his presentation was due to abuse of illicit drugs. Regarding the records from Baptist/Meadhaven and Griel, it is important to note that Malingering was not properly addressed at those facilities. There is no indication that exaggeration or fabrication of symptoms was considered, or that appropriate psychological testing was administered.
>
> The results of the initial forensic evaluation indicate that Mr. Springs was malingering with respect to his psychiatric symptoms and cognitive deficits. (Interestingly, his intelligence was estimated to be within the low average range while he was at Baptist/Meadhaven. Also, it was noted that he worked as a cook at Kentucky Fried Chicken. This is in stark contrast to his IQ score of 40 during the evaluation at FDC Miami. Such a score would be indicative of Moderate Mental Retardation. An individual with such a score would be incapable of working as a cook.) In addition, it was this examiner's opinion that the defendant was also malingering with respect to his competency-related abilities. There was no objective information to suggest that Mr. Springs was experiencing legitimate symptoms of mental illness. His self-report was inconsistent with clinical observations, and his claims were inconsistent with those of true psychotic patients. While it is possible that the defendant previously experienced psychotic symptoms in 2004, it is highly likely that the occurrence of any such features were the result of voluntary substance abuse.
>
> The examiner's opinions regarding Mr. Spring's competency to stand trial and his sanity at the time of the alleged offense remain unchanged from the original forensic evaluation. The rationale for these conclusions were provided in the initial report. Neither the reviewed mental health records nor the testimony provided at the hearing causes this examiner to alter these opinions. It is believed that no further evaluation of the defendant is required at this time.

Id. at 5.

The court has carefully considered the evidence adduced at the competency hearing, the report of Dr. Covin,[2] and the evaluations prepared by Dr. Gutierrez, and it is unpersuaded

---

[2] Defendant was referred to Dr. Covin by his counsel. Covin attempted psychometric testing, but Springs indicated that the voices were telling him not to

by Springs' claim that he is incompetent to stand trial. Gutierrez' conclusions are well supported by his observations and by objective testing. They are also consistent with the court's own experience at the competency hearing, at which Springs' memory appeared selective, his unusual demeanor largely contrived, and his testimony intentionally calculated to dissemble incompetency.[3] The court does not doubt that Spring has at times behaved in a bizarre and uncooperative manner with his counsel, nor does it rule out the possibility, as Gutierrez suggested, that the defendant may have experienced psychotic symptoms at some point in the past as a result of voluntary substance abuse.[4] However, "not every manifestation

---

cooperate, and he became withdrawn, sullen, and non-responsive. Doc. # 31, Ex. A at 5. As Covin reported, "After I attempted to administer each instrument and the patient refusing to respond and failing to make even one response (correct, incorrect) to any item, he closed his eyes and sat very still in the chair as if he had gone to sleep." Covin's diagnosis, which he offered without any obtaining any objective information, was, on Axis I, schizophrenia, undifferentiated type, and possible mild mental retardation on Axis III. Id. at 6.

[3] For example, Springs claimed during the hearing that he hears voices all day, every day. However, he could not describe how many voices there were or whether they were male or female. He also said that he saw the devil "sitting on" the undersigned in the courtroom during the hearing, yet he could not answer whether the devil was male or female, or describe it further, other than to say that it was "red." Springs also showed no alarm or any other reaction to the alleged apparition. Gutierrez testified that schizophrenics are typically able to describe their hallucinations in much greater detail, and that they also would normally attend to such internal stimuli in some manner. Thus, if someone with schizophrenia "thought the actual devil was just a few feet from them," that would typically result, as Gutierrez testified, "in a very fearful reaction. Not only that, but the description of the devil would certainly be more than 'red' and 'I don't know.'" (October 2, 2006 hearing.)

[4] Springs' mother testified that he smoked marijuana and drank alcohol at the time that he allegedly began hearing voices at age fifteen, and Springs himself said that he started using marijuana before he began hearing voices. (October 2, 2006 hearing.)

of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges .... Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." Battle v. United States, 419 F.3d 1292, 1299 (11th Cir. 2005). In this case, the court is persuaded that Springs is malingering, as Gutierrez concluded.

### III. Conclusion

Accordingly, the Magistrate Judge concludes that a preponderance of the evidence establishes that the defendant is not presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense pursuant to 18 U.S.C. §4241. Thus, it is the RECOMMENDATION of the Magistrate Judge that defendant Springs be DECLARED competent to stand trial or plead guilty pursuant to 18 U.S.C. §4241.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before February 25, 2007. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District

Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. 1982).  <u>See</u> <u>Stein v. Reynolds Securities, Inc.</u>, 667 F.2d 33 (11th Cir. 1982).  <u>See</u> <u>also</u> <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981, <u>en</u> <u>banc</u>), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 12th day of February, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE